UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA LOUGHNEY<br>    Plaintiff<br><br> v.<br><br>LACKAWANNA COUNTY, *et al.*,<br><br>    Defendants | CIVIL ACTION NO. 3:19-cv-1101<br><br><br>(ARBUCKLE, M.J.) |

MEMORANDUM OPINION
(Doc. 13, Motion to Dismiss)

I. INTRODUCTION

On June 23, 2019, Ryan Lynady was committed to the Lackawanna County Prison for pre-trial detention. On July 27, 2018, he was found hanging in his cell. His death was ruled a suicide. This lawsuit seeks to place liability for the death on the facility, the medical providers, and the staff. The medical providers seek dismissal of the case against them based on a pleading defect in the complaint. Because I do not believe the complaint is defective, their motion will be denied.

II. BACKGROUND & PROCEDURAL HISTORY

Plaintiff brings this suit individually, as mother of Ryan Benjamin Lynady ("Decedent"), and as administratix of Decedent's estate. (Doc. 1 ¶ 5). On June 23, 2018, Decedent entered Defendant Lackawanna County's prison for pretrial detention. *Id.* at ¶ 36.

According to the Complaint, Decedent was prescribed suboxone and experiences withdrawal without suboxone. *Id.* at ¶ 38. Plaintiff alleges that Defendant CCI—who has contracted as the prison's medical personnel—failed to provide, at any time, Decedent's medication. *Id.* at ¶ 39. Instead, Decedent was placed on a "thirty-minute detox watch," (*Id.* at ¶ 41), where Defendant CCI "essentially throw[s] an inmate into a cell to be alone indefinitely, receiving no medication other than Tylenol." *Id.* at ¶ 43. Plaintiff alleges that, on the day of Decedent's death (July 27, 2018), the prison was short-staffed and prison staff could not check on Decedent as frequently as they should have. *Id.* at ¶¶ 61-62.

On July 27, 2018, approximately 3:00 p.m., Decedent was found in his cell, hanging from a bedsheet—his death was ruled a suicide. *Id.* at ¶¶ 45-46. Decedent received no medical care between his intake on July 23, 2018, and his death on July 27, 2018. *Id.* at ¶ 48.

Prison policy allegedly dictated that Decedent be placed in a camera cell, but all of these cells were full. *Id.* at ¶ 63. A June 8, 2016, arbitration award rendered against Defendant County found that "correctional officers cannot safely accomplish assigned duties due to . . . inadequate correctional officer staff to properly supervise the inmate population." *Id.* at ¶ 101. This award also found that "the prison is an unsafe environment and that a detailed staffing analysis is required." *Id*.

Plaintiff filed her Complaint on June 26, 2019. (Doc. 1). Plaintiff names the following defendants: Lackawanna County ("Defendant County"); Correctional Care, Inc. ("Defendant CCI"); Patrick O'Malley; Laureen Cummings; Jerry Notarianni; Edward Zaloga ("Defendant Zaloga"); Tim Betti; and Satish Mallik, M.D, along with John and Jane Doe Defendants. (Doc. 1). Plaintiff alleges understaffing and failure to supervise Decedent, along with the lack of medical treatment, caused Decedent's suicide (or at least failed to prevent it with a duty to do so).

Plaintiff alleges four Causes of Action:

1) Violation of Decedent's Constitutional Rights under 42 U.S.C. §1983 against Defendants County, CCI, O'Malley, Notarianni, Cummings, Zaloga, and Betti (Doc. 1, p. 14 ¶105);

2) Another violation under 42 U.S.C. §1983 against Defendants Mallik and John and Jane Doe Defendants (Doc. 1, p. 15 ¶110);

3) Medical Negligence against Defendants Mallik, Zaloga, and John/John Doe Defendants (Doc. 1, p. 16 ¶116);

4) Corporate Negligence and Vicarious Liability against Defendants CCI and Zaloga (Doc. 1, p. 16 ¶ 120).

On September 9, 2019, Defendants CCI and Zaloga ("Moving Defendants") filed a Motion to Dismiss for Failure to State a Claim. (Doc. 13). On October 8, 2019, Moving Defendants filed their Brief in Support (Doc. 18). Moving Defendants argue that Plaintiff failed to allege "gross negligence" in accordance with the Mental Health Procedures Act, 50 P.S. § 7101 et seq. *Id.* at p. 1.

On October 22, 2019, Plaintiff filed her Brief in Opposition (Doc. 21). On November 5, 2019, Moving Defendants filed their Reply (Doc. 23).[1] After reviewing Plaintiff's Complaint and the arguments raised in the parties' briefs, I believe that Plaintiff succeeds in stating a claim upon which relief can be granted. Accordingly, Defendants CCI and Zaloga's Motion to Dismiss (Doc. 13) will be denied.

III. LEGAL STANDARD

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, the court "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In reviewing a motion to dismiss, a court must "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

---

[1] Defendants' reliance on an exhibit outside of the Complaint is misplaced in the Motion to Dismiss stage. We may not consider this submission for this purpose.

In deciding whether a complaint fails to state a claim upon which relief can be granted, the court is required to accept as true all factual allegations in the complaint as well as all reasonable inferences that can be drawn from the complaint. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994). These allegations and inferences are to be construed in the light most favorable to the plaintiff. *Id.* However, the court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Further, it is not proper to "assume that [the plaintiff] can prove facts that [he] has not alleged . . . ." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Following the rule announced in *Ashcroft v. Iqbal*, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a complaint must recite enough factual allegations to raise the plaintiff's claimed right to relief beyond the level of mere speculation. *Id.* To determine the sufficiency of a complaint under the pleading regime established by the Supreme Court, the court must engage in a three-step analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675, 679). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief" and instead must 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

As the court of appeals has observed:

> The Supreme Court in *Twombly* set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in *Iqbal*. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011).

In undertaking this task, the court generally relies only on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar.*

*Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); *see also, U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.") However, the court may not rely on other parts of the record in determining a motion to dismiss. *Jordan v. Fox, Rothschild, O'Brien &Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

IV. ANALYSIS

In her Complaint, Plaintiff alleges that the records from Decedent's inmate medical intake screening indicate that Decedent was prescribed suboxone and that he experiences withdrawal without suboxone. (Doc. 1 ¶ 38). Plaintiff alleges that Defendant CCI—who has contracted to be the prison's medical personnel—failed to provide, at any time, Decedent's medication, (*Id.* at ¶ 39), and, instead, Decedent was placed on a "thirty-minute detox watch," (*Id.* at ¶ 41), but on the day of Decedent's death (July 27, 2018), the prison was short-staffed and they could not check on Decedent as frequently as they should have. *Id.* at ¶¶ 61-62.

On July 27, 2018, approximately 3:00 p.m., Decedent was found in his cell, hanging from a bedsheet—his death was ruled a suicide. *Id*. at ¶¶ 45-46. Plaintiff alleges that Decedent received no medical care between his intake on July 23, 2018, and his death on July 27, 2018. *Id*. at ¶ 48.

Plaintiff also alleges that policy dictated that Decedent be placed in a camera cell, but all of them were full. *Id*. at ¶ 63. Separately, but relatedly, Plaintiff alleges that a June 8, 2016, arbitration award rendered against Defendant County found that "correctional officers cannot safely accomplish assigned duties due to . . . inadequate correctional officer staff to properly supervise the inmate population," and that this award also found that "the prison is an unsafe environment and that a detailed staffing analysis is required." *Id*. at ¶ 101.

Plaintiff alleges this understaffing and failure to supervise Decedent, along with the lack of medical treatment, caused Decedent's suicide (or at least failed to prevent it with a duty to do so), which is the basis for her four Causes of Action alleged in paragraphs 105-129 of the Complaint. *Id*. at ¶¶ 105-129.

Moving Defendants seek to dismiss Plaintiff's Complaint for failure to allege gross negligence in accordance with the Mental Health Procedures Act ("MHPA"), 50 P.S. § 7101 *et seq.* (Doc. 18, p. 1).

Moving Defendants argue that Section 7114 provides for immunity for a "county administrator, a director of a facility, a physician or other authorized

person who participates in a decision that a person be examined or treated under [the] act," in the absence of willful misconduct or gross negligence. *Id*. at p. 3. Moving Defendants assert that they "undoubtedly qualify for the immunity provisions of the MHPA," and Plaintiff's allegations "fail to rise to the level of 'willful misconduct' or gross negligence, as required by the MHPA." *Id*. at p. 5.

In response, Plaintiff argues that "[t]he determination of whether or not conduct rises to the level of gross negligence is one for the jury to decide and should only be determined by a court where 'the case is entirely free from doubt, and no reasonable jury could find gross negligence.'" (Doc. 21, p. 5)(quoting *Martin v. Holy Spirit Hospital*, 154 A.3d 359, 365 (Pa. Super. 2017)(quoting *Albright v. Abington Memorial Hospital*, 696 A.2d 1159, 1164-65 (Pa. 1997)).

Contrary to Defendant's contentions, Plaintiff need not use the magic words "gross negligence" or "willful misconduct." Indeed, Plaintiff cites to *Bloom v. DuBois Regional Medical Center*, in which the court found that where the plaintiff was admitted to a psychiatric unit, was found hanging, and alleged failure "to adequately test, diagnose, and supervise," that plaintiff adequately stated a gross negligence claim to be determined by a jury. *Id*. (citing *Bloom v. DuBois Regional Medical Center*, 597 A.2d 671, 673 (Pa. Super. 1991)). Plaintiff asserts that, based on that averment, the plaintiff in *Bloom* was entitled to conduct discovery. *Id*.

Thus, Plaintiff argues that the allegations in her Complaint "are certainly sufficient at this early stage to proceed to discovery." (Doc. 21 at p. 6).

Section 320 of the Restatement of Torts (2d) "provides that a party who takes custody of another under circumstances such as to deprive the other of normal opportunities for protection is under a duty to protect that person against an unreasonable risk of physical harm, and to render aid when required[;] [t]his section . . . was found by the Supreme Court to authorize an action against prison officials who failed to tend to the needs of a prisoner overnight as he lay ill without adequate food, clothing, **or medical care**, resulting in his death. Special relationships: persons in custody, 3 West's Pa. Prac., Torts: Law and Advocacy § 1.9 (citing *Ammlung v. Chester*, 302 A.2d 491 (1973) (emphasis added)).

In cases arising under the MHPA, the Pennsylvania Superior Court has "held that gross negligence is conduct by the defendant 'where the facts support substantially more than ordinary carelessness, inadvertence, laxity, or indifference. The behavior of the defendant must be flagrant, grossly deviating from the ordinary standard of care.'" Gross negligence, 3 West's Pa. Prac., Torts: Law and Advocacy § 1.18 (quoting *Bloom v. DuBois Regional Medical Center*, 597 A.2d 671, 679 (1991)).

Indeed, in *Bloom*, the Superior Court of Pennsylvania addressed the very same issue here—whether the plaintiff has sufficiently pled gross negligence to fall

within the exception to immunity under the MHPA. *Bloom*, 597 A.2d at 673. In *Bloom*, the plaintiff in a mental hospital was found hanging by shoelaces evidently attempting suicide; her attempt failed and she sued the facility and doctors involved for failure to supervise, among other counts. *Bloom*, 597 A.2d at 673-74. The defendants there asserted immunity under Section 7114(a) of the MHPA, 50 P.S. § 7114(a), also alleging the plaintiff had failed to allege "gross negligence" or "willful misconduct." *Id.* at 674. The trial court concluded three things: (1) the original complaint pleaded facts that could not give rise to gross negligence as to a defendant; (2) the appellants could not amend to add allegations that would sufficiently allege such; and (3) a doctor defendant in that case was immune due to the prior two conclusions, under Section 7114. *Id.* at 677.

On appeal, the Superior Court found that the issue of whether the alleged conduct was gross negligence could not be determined as a matter of law from the face of the complaint. *Id*. The court held that:

> the legislature intended the term gross negligence to mean a form of negligence where the facts support substantially more than ordinary carelessness, inadvertence, laxity, or indifference. The behavior of the defendant must be flagrant, grossly deviating from the ordinary standard of care.

*Id.*

The Superior Court reversed. *Id*. The court reasoned that, applying this definition, the defendants held themselves out as competent to provide psychiatric

treatment, completely failed to diagnose her and, though informed upon admission of the plaintiff's disorder, nevertheless failed to take adequate precautions to assure the plaintiff's safety. *Id*. The court further noted that though it was not certain the plaintiffs could develop evidence demonstrating gross negligence, this determination "has always been particularly committed to determination by a jury." *Id*. at 679-80 (citing *Colloi v. Philadelphia Electric Co.*, 481 A.2d 616 (1984); *East Texas Motor Freight v. Lloyd*, 484 A.2d 797 (1984)).

Additionally, the court stated:

> It is an issue that may be removed from consideration by a jury and decided as a matter of law only where the case is entirely free from doubt and there is no possibility that a reasonable jury could find negligence.

*Id.* at 680.

In the present case, Plaintiff's contention must survive under the plausibility standard. Here, like in *Bloom*, Moving Defendants held themselves out to be medical professionals. Moving Defendants contracted with Defendant County to provide medical services for the prison. Additionally, taking Plaintiff's allegations as true and lending Plaintiff all reasonable inferences, the failure to administer the prescribed medication for opioid withdrawal, coupled with the apparent lack of supervision, plausibly pleads a claim for relief. A reasonable jury can find that the conduct alleged—withholding medication and failing to supervise an inmate who was supposed to be in a camera cell or a thirty-minute check-in schedule—

amounts to gross negligence. In sum, in light of *Bloom*, these claims should survive Moving Defendants' Motion to Dismiss.

V.   CONCLUSION

In conclusion, Moving Defendants' Motion must be denied. Moving Defendant's argument, that Plaintiff must affirmatively allege "gross negligence" or "willful misconduct," is misplaced. Further, in light of *Bloom*, questions regarding whether the conduct alleged rises to the level of gross negligence may be decided as a matter of law only where the case is entirely free from doubt and there is no possibility that a reasonable jury could find negligence. Due to the factually similar nature of Plaintiff's claims to those in *Bloom*, I conclude that Plaintiff has plausibly pleaded facts which may give rise to entitlement of relief. Therefore, Moving Defendants' Motion will be denied.

An appropriate order shall issue.

Date: March 31, 2020           BY THE COURT

                               *s/William I. Arbuckle*
                               William I. Arbuckle
                               U.S. Magistrate Judge