UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA LOUGHNEY, | ) | CIVIL ACTION NO. 3:19-CV-1101 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| CORRECTIONAL CARE, INC., *et al.*, | ) | |
| Defendants | ) | |

MEMORANDUM OPINION

## I.     INTRODUCTION

Ryan Lynady committed suicide after four days spent in custody in Lackawanna County Prison. His mother Lisa Loughney, as the administrator of his estate, sued the county, prison staff, a private corporation under contract to provide medical services the prison, and the medical staff employed by that corporation to provide medical care at the prison.

The county and prison officials have settled. Seven Defendants remain: Correctional Care Inc., one of its doctors, and five of its nurses, (collectively the "Medical Defendants"). The Medical Defendants have filed a Motion to Dismiss (Doc. 44) challenging the sufficiency of the Amended Complaint (Doc. 35). Because the Amended Complaint meets minimum standards the motion to dismiss will be denied.

The Medical Defendants have also filed a Motion requesting leave to file a cross claim against the County and Prison Officials (who are no longer parties to this case). (Doc. 71). For procedural reasons this Motion will be deemed withdrawn.

II.     BACKGROUND & PROCEDURAL HISTORY

On or around July 22, 2018, Ryan Lynady ("Lynady") was arrested on state criminal charges. (Doc. 35, ¶ 44).[1] Lynady was confined in Lackawanna County Prison pending trial on those charges. *Id.* During intake, prison staff noted that Lynady was an alcohol addict, suffered from mental illness, was actively under the influence of drugs or alcohol, and was found in possession of a needle. *Id.* at ¶¶ 45-46.

Nurse Beth Matalonis ("Defendant Matalonis") performed the medical portion of Lynady's intake screening. *Id.* at ¶ 47. As part this screening, Defendant Matalonis noted that Lynady was prescribed suboxone, was a habitual suboxone user, experienced withdrawal when suboxone is stopped, and suffered from an unspecified "mental illness." *Id.* at ¶¶ 45, 48.

Following the intake screening, Lynady was placed on "thirty-minute detox watch," until further notice. *Id.* at ¶ 51. The prison medical staff did not issue Lynady

---

[1] In the Amended Complaint Plaintiff alleges that Lynady was arrested in June 2018 and committed suicide in June 2018 while at Lackawanna County Prison. However, Plaintiff also alleges that the prison staff failed to check Lynady at regular intervals in July 2018—after Lynady's death. I infer that these events transpired either in June *or* July, but not both. In their Brief in Opposition, Defendants use the July dates.

a new prescription for suboxone to be used in the prison. *Id.* at ¶ 49. Despite his placement on a "thirty-minute detox watch," correctional officers failed to check Lynady at the appropriate intervals. *Id.* at ¶¶ 52-58.

In addition to the lack of regular check-ins by the correctional officers, Plaintiff also alleges that Lynady was not provided with appropriate mental health or detox care while at Lackawanna County Prison.

During the period of incarceration at issue, Lynady was examined by Nurses Holly Bogaski, Beth Matalonis, Cassandra Ketten, Akasha Mrykalo, and Jessica Wombacker. *Id.* at 69. Defendants Bogaski, Matalonis, Ketten, Mrykalo, and Wombacker did not refer Lynady to a doctor, did not give Lynady a bottom bunk, did not place Lynady in the special needs unit, and failed to perform "adequate" medical detox checks (required once per shift, for a total of 3 checks per day) nine times over a period of four days. *Id.* at 71-73. Plaintiff alleges that, during the medical detox checks that were done, Defendants Bogaski, Matalonis, Ketten, Mrykalo, and Wombacker observed Lynady in extreme distress and took no action. *Id.* at ¶ 75.

On July 27, 2018, Lynady was found hanging in his cell from a sheet. *Id.* at ¶ 61. At the time he was found, it had been fifty-one minutes since the last staff check-in. *Id.*

On June 26, 2019, Plaintiff initiated this case alleging claims arising out of Lynady's death. (Doc. 1). On July 26, 2020, Plaintiff filed an Amended Complaint against the following seventeen Defendants:

(1)     Lackawanna County;

(2)     Correctional Care, Inc.;

(3)     Patrick O'Malley, Lackawanna County Commissioner;

(4)     Laureen Cummings, Lackawanna County Commissioner;

(5)     Jerry Notarianni, Lackawanna County Commissioner;

(6)     Edward Zaloga, president of Defendant CCI;

(7)     Tim Betti, Warden of Lackawanna County Prison;

(8)     Satish Malik, a psychiatrist responsible for providing care at Lackawanna County Prison;

(9)     John Gilroy, corrections officer at Lackawanna County Prison;

(10)    Christopher Jenkins, corrections officer at Lackawanna County Prison;

(11)    Delon Aldubayan, corrections officer at Lackawanna County Prison;

(12)    Mike Zemantauski, corrections officer at Lackawanna County Prison;

(13)    Holly Bogaski, nurse employed by Defendant CCI to provide care at Lackawanna County Prison;

(14)    Cassandra Ketten, nurse employed by Defendant CCI to provide care at Lackawanna County Prison;

(15)    Beth Matalonis, nurse employed by Defendant CCI to provide care at Lackawanna County Prison;

(16)    Akasha Mrykalo, nurse employed by Defendant CCI to provide care at Lackawanna County Prison; and

(17)    Jessica Wombacker, nurse employed by Defendant CCI to provide care at Lackawanna County Prison.

(Doc. 35).

In November 2020, the claims asserted by Plaintiff against the ten non-medical Defendants were settled out of Court. (Doc. 69). The remaining claims against the Medical Defendants are:

Count 1:    *Monell* claim against Defendants CCI and Zaloga;

Count 2:    § 1983 denial of adequate medical care/failure to prevent suicide claim against Defendants Zaloga, Bogaski, Matalonis, Ketten, Mrykalo, and Wombacker;

Count 4:    State Law Medical Negligence against Defendant Zaloga; and,

Count 5:    State Law Corporate Negligence & Vicarious Liability against Defendants CCI and Zaloga.

Presently pending before the Court is a Motion to Dismiss filed by Defendants CCI, Zaloga, Bogaski, Matalonis, Ketten, Mrykalo, and Wombacker (collectively the "Medical Defendants"). (Doc. 44). This Motion is ripe for resolution. (Docs. 52, 67, 68).

On January 12, 2021, the Medical Defendants filed a Motion requesting leave to file cross-claims. (Doc. 71, pp. 2-6). Along with that Motion, the Medical Defendants filed a proposed order (Doc. 71, p. 1), their proposed crossclaims (Doc. 71-1), and a certificate of non-concurrence (Doc. 71-2). This Motion is also ripe for resolution.

III.     LEGAL STANDARD

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, the court "must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and ultimately determine whether Plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In review of a motion to dismiss, a court must "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." Id. at 230.

In deciding whether a complaint fails to state a claim upon which relief can be granted, the court is required to accept as true all factual allegations in the complaint as well as all reasonable inferences that can be drawn from the complaint. *Jordan v. Fox Rothchild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994). These allegations and inferences are to be construed in the light most favorable to the plaintiff. *Id.* The court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Further, it is not proper to

"assume that the [plaintiff] can prove facts that [he] has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. *Id.* To determine the sufficiency of a complaint under the pleading regime established by the Supreme Court, the court must engage in a three-step analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where they are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Santiago v. Warminister Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675, 679). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief" and instead must "'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

As the Court of Appeals has observed:

> The Supreme Court in *Twombly* set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard

when the factual pleadings "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint which pleads facts "merely consistent with" a defendant's liability, "stops short of the line between possibility and plausibility of 'entitlement of relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

*Burch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011).

IV.    ANALYSIS

   A.    WHETHER PLAINTIFF'S MONELL CLAIM SHOULD BE DISMISSED

In Count One of her Amended Complaint, Plaintiff alleges:

**Count One**
**42 U.S.C. § 1983**
***Monell* Liability**
**Plaintiffs v. Defendants County, CCI, O'Malley, Notarianni, Cummings, Zaloga, and Betti**

. . . .

135.    Defendants County, CCI, O'Malley, Cummings, Natarianni, Zaloga, and Betti, developed implemented, approved, and/or maintained a number of deficient customs, policies, and/or practices with deliberate indifference, which proximately caused the deprivation of Decedent's rights to be free from cruel and unusual punishment, right to due process, right to bodily integrity, right to protection, and right to medical treatment under the 4th, 8th, and 14th Amendment to the United States Constitution.

136.    These policies and practices include failure to train, failure to staff, lack of policy, and defective policy, as detailed at length above.

137.   Plaintiff's *Monell* claim is specifically premised on the failure to train and staff nurses and corrections officers and the defective policies and practices specifically noted in this complaint.

138.   Defendants County, CCI, O'Malley, Cummings, Notarianni, Zaloga, and Betti, were final policymakers regarding medical care at the Prison.

139.   These policies and/or customs evidence a reckless or callous indifference to the federally protected rights of Decedent.

(Doc. 35, ¶¶ 135-138).

In the Amended Complaint, Plaintiff alleges that Defendant CCI is a corporation under contract to provide medical services to the inmates at Lackawanna County Prison. (Doc. 35, ¶ 10). A private corporation contracted by a prison to provide healthcare for inmates cannot be held liable under 42 U.S.C. § 1983 on a *respondeat superior* theory. *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003). Rather, pursuant to *Monell* and *Natale,* a private corporation like contracted by a prison to provide healthcare can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978) (subjecting municipalities to liability for policies or customs that cause constitutional deprivations); *Natale*, 318 F.3d at 584 (applying *Monell* to a private company providing medical services to inmates). To prevail on a § 1983 claim against Defendant CCI, Plaintiff must allege facts in the Amended Complaint that show "there was a relevant [CCI] policy or

custom, and that the policy caused the constitutional violation" for which he seeks relief. *See Natale*, 318 F.3d at 583-84. ‼

‼     The Medical Defendants do not discuss Plaintiff's *Monell* claim in their Motion to Dismiss. However, they argue that the conduct of Defendant CCI's employees did not violate the constitution. I infer that, the Medical Defendants take the position that, the *Monell* claim should also be dismissed because Defendant CCI's employees did not violate the constitution. As explained in Section IV.B(1) & (2) of this Opinion, I find that Plaintiff has alleged enough facts to state a plausible claim. Therefore, Plaintiff's *Monell* claim should also be permitted to proceed.

B.     WHETHER PLAINTIFF'S § 1983 CLAIMS FOR DENIAL OF ADEQUATE MEDICAL CARE SHOULD BE DISMISSED

In Count Two of her Amended Complaint, Plaintiff alleges:

**Count Two**
**42 U.S.C § 1983**
**Plaintiff v. Defendants Mallik, Zaloga, Bogaski, Matalonis, Ketten, Mrykalo, and Wombacker**
**Failure to Provide Medical Care**

. . . .

141.     The conduct and failure to act of Defendants Mallik, Zaloga, Bogaski, Matalonis, Ketten, Mrykalo, and Wombacker against Decedent were undertaken under color of state law with deliberate indifference and caused the violation of Decedent's rights to be free from cruel and unusual punishment, right to due process, and right to medical treatment under the 4th, 8th, and 14th Amendment to the United States Constitution.

142.     Defendants' acted in concert and in conspiracy with one another with knowledge, intent, and malice.

143. Moreover, the conduct engaged in by the Defendants exceeded normal standards of decent conduct and were willful, malicious and outrageous and therefore punitive damages are necessary and appropriate.

144. The actions of Defendants were not objectively reasonable under the present set of facts and circumstances previously articulated herein.

145. As a result of Defendants' violations of Decedent's Constitutional rights, Decedent suffered damages including, but not limited to, that he was killed and suffered all damages associated with such an unnatural and premature death.

(Doc. 35, ¶¶ 141-145).

At the outset, I note that Plaintiff as pleaded her claim under the Fourth, Eighth, and Fourteenth Amendments. In the Amended Complaint she alleges that Lynady was a pretrial detainee at the time of his suicide. (Doc. 35, ¶ 44) (alleging that Lynady entered the Prison on new criminal charges and was "subject to pretrial detention."). Therefore, for the purposes of this Motion to Dismiss, I will analyze Plaintiff's claims under the Fourteenth Amendment.

In addition, despite its title, it isn't clear to me whether Plaintiff is alleging that Lynady was denied adequate medical and mental health care while at Lackawanna County Prison, or whether she is alleging a claim that Defendants Zaloga, Matalonis, Bogaski, Ketten, Mrykalo, and Wombacker failed to prevent Lynady's suicide.

"The Third Circuit has set out several distinct constitutional claims that may be raised when a pretrial detainee commits suicide, including failure to prevent suicide and deliberate indifference to a serious medical need." *Estate of Semprevivo v. Atlantic County*, No. 18-CV-1953, 2020 WL 7022947 at *5 (E.D. Pa. Nov. 30, 2020) (citing *Palakovic v. Wetzel*, 854 F.3d 209, 224-27 (3d Cir. 2017)). In either case, Plaintiff would need to allege facts showing that the Medical Defendants were deliberately indifferent—something the Medical Defendants argue Plaintiff has not done.

To plead a claim for the denial of adequate medical care under the Fourteenth Amendment, Plaintiff needs to allege: (1) deliberate indifference on the part of the prison medical staff; and  (2) a serious medical need. *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987); *Natale v. Camden Cty. Correctional* Facility, 318 F.3d 575, 581 (3d Cir. 2003) ("[T]he Fourteenth Amendment affords pretrial detainees protections at least as great as the Eighth Amendment protections available to a convicted prisoner."). In their Motion, the Medical Defendants do not address whether Plaintiff pleaded that Lynady had a serious medical need. Instead, they generally argue that the facts alleged in the Amended Complaint are not enough to show deliberate indifference, and instead show only negligence.

The elements of a Fourteenth Amendment Due Process claim seeking to hold prison medical staff liable for failure to prevent a detainee's suicide are:

> (1) that the individual had a particular vulnerability to suicide, meaning that there was a "strong likelihood, rather than a mere possibility," that suicide would be attempted; (2) that the [medical staff] knew or should have known of the individual's particular vulnerability; and (3) that the [medical staff] acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the particular vulnerability.

*Palakovic v. Wetzel*, 854 F.3d 209, 223-24 (3d Cir. 2017). For the purposes of their Motion, the Medical Defendants do not address whether Plaintiff has pleaded enough facts to show that Lynady had a particular vulnerability to suicide and that the Medical Defendants knew or should have known of that vulnerability. Instead, they generally argue that the facts alleged in the Amended Complaint are not enough to show deliberate indifference, and instead show only negligence.

In support of their Motion that Count Two of the Amended Complaint should be dismissed, the Medical Defendants argue:

> The instructive law in this issue comes from the United States Supreme Court decision in *Estelle v. Gamble*, 429 U.S. 97 (1976). In that case, a pro se prison plaintiff alleged deprivation of medical care by the prison because he claimed the prison ignored his heart and back problems. *Id.* at 97.

> Deprivation of medical needs rising to the level of 8th Amendment violations is a high standard. The 8th Amendment prohibits "cruel and unusual punishment." The Amendment has been said to embody "broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Jackson v. Bishop*, 404 F.2d 571 (1968). Treatment that involves the "unnecessary and wanton infliction of pain" is a violation of the Amendment. *Gregg v. Georgia*, 428 U.S. 153 (1976).

In *Estelle*, the Court determined that only deliberate indifference to serious medical needs will constitute the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. Mere negligence is not enough. "In the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Id.* at 105-106.

The *Estelle* Court noted that the Plaintiff "was seen by medical personnel on 17 occasions spanning a 3 month period," and questions over "additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment . . . and does not represent cruel and unusual punishment." *Id.* at 107.

In the case at hand, as in *Estelle*, the criticisms of Medical Defendants' care are not "repugnant to the conscience of mankind." Id. at 106. Plaintiff does not allege that Decedent was not seen at all by medical personnel, only that Decedent "was never seen by a medical doctor, nurse practitioner, physician's assistant, or any similar professional." (Doc. 35 at ¶78). Such an allegations, disagreements with the level of qualifications of the personnel caring for Decedent, involve such "matter[s] for medical judgment," not deliberate indifference. *Estelle*, 429 U.S. at 107.

Likewise, claims of "insufficient medication," medical, and psychiatric care, (Doc. 35 at ¶¶ 63, 77, and 83), are further disagreements in clinical determinations made by Medical Defendants. While Plaintiff may feel that Medical Defendants could or should have done more, such determinations are not of the type rising to the level of "an unnecessary and wanton infliction of pain," as defined by the Estelle Court. *Estelle*, 429 U.S. at 104.

(Doc. 52, pp. 9-11).

In response, Plaintiff argues:

Deliberate indifference requires an official "to both 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and to 'also draw that inference.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 835-37 (1994). Deliberate indifference can exist in numerous scenarios including: (1) denial of

reasonable treatment requests; (2) failed to provide care despite knowledge of the need for that care; (3) delay of treatment for non-medical reasons; and (4) preventing an inmate from obtaining recommended treatment. *Id.* (citing *Lanzaro*, 834 F.2d at 347). Deliberate indifference exists where an inmate is validly prescribed medication by a doctor outside of prison and prison medical officials cease that medication. *Wolfe v. Horn*, 130 F.Supp.2d 648, 652 (E.D. Pa. 2001) citing (*Phillips v. Michigan Dep't of Corrections*, 731 F.Supp. 792 (W.D. Mich. 1990), *aff'd*, 932 F.2d 969 (6th Cir. 1991)). Stopping medication is "measurably worse" than not providing treatment at all. *Id.* (citing *Phillips*, 731 F.Supp. at 800).

Here, there are numerous bases for liability. There was a complete abandonment of psychiatric care. Dr. Zaloga ceased the suboxone which was validly prescribed outside of the prison, causing Decedent to enter withdrawal. This alone, like in *Wolfe* is sufficient to show deliberate indifference. The Complaint alleges that the nurses witnessed Decedent in distress, knew he needed treatment, and ignored him. This is all more than enough to establish deliberate indifference, and Defendants' motion should be denied.

(Doc. 67, pp. 9-10).

### 1.    Claim Against the Defendant Nurses

In her Amended Complaint, Plaintiff alleges that Lynady was screened at the time of intake by Defendant Matalonis. Defendant Matalonis "noted" presumably on Lynady's medical chart that Lynady: (1) had a history of "mental illness" (the Amended Complaint does not specify the nature of extent of this history); (2) was a habitual drug and alcohol user; (3) was actively under the influence of drugs; and (4) had a current prescription for suboxone. (Doc. 35 ¶ 45). Between July 22, 2018 and July 27, 2018, Lynady was not treated with suboxone. *Id.* at ¶ 49. At some point

before his suicide on July 27, 2018, Lynady was "exhibiting violent signs of withdrawal and suicidal symptoms." *Id.* at ¶ 59.

CCI has a short (65 word) standing order regarding detox treatment. *Id.* at ¶¶ 65-67. That standing order requires that the inmate be referred to a physician, be given a bottom bunk, and be given the "requisite medication." *Id.* at ¶¶ 70-71. Lynady was not referred to or examined by a physician or psychiatrist between July 22, 2018 and July 27, 2018. *Id.* Lynady was not given a bottom bunk. *Id.* The Amended Complaint does not specify what, if any, medication was administered.

Defendants Matalonis, Bogaski, Ketten, Mrykalo, and Wombacker (collectively the "Defendant Nurses") were "collectively" responsible for conducting one medical detox check per shift (3 checks per day). *Id.* at ¶ 72. The Defendant Nurses did not perform "appropriate" checks on nine out of thirteen checks during the period between July 22, 2018 and July 27, 2018. *Id.* at ¶ 72. They also missed two checks. *Id.* at ¶ 74.

The Supreme Court has explained that the term "deliberate indifference" lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Farmer,* 511 U.S. at 837. It explained that:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; that is, the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.*

The demarcation of where negligence ends, and deliberate indifference begins, is a subtle one. Not all failures to provide care demonstrate the state of mind required for deliberate indifference. For example, there is no constitutional violation when prison medical staff, through the exercise of professional judgment, negligently misdiagnoses or treats a condition. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Similarly, mere disagreement between prison medical staff and an inmate about the propriety, adequacy, or necessity of a particular course of treatment over another often does not rise to the level of a constitutional violation. *Monmouth*, 834 F.2d at 346 (citing *Bowering v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) and *Massey v. Hutto*, 545 F.2d 45, 26 (8th Cir. 1976)). The distinction between negligence and deliberate indifference is that, for deliberate indifference, a defendant acts with reckless disregard to a known harm. *Crawford v. Corizon Health, Inc.*, No. 1:17-CV-00113-BR, 2018 WL 9965506 at *3 (W.D. Pa. Jan. 2, 2018).

As noted in *Shultz v. Allegheny Cty.*:

> Our Court of Appeals has identified several other scenarios that satisfy *Estelle*, such as "[w]here prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate to undue suffering or the threat of tangible residual injury," *Monmouth*, 834 F.2d at 346 (internal quotation omitted), or "where 'knowledge of the need for medical care [is accompanied by the] . . . intentional refusal to provide that care,'" *Thomas v. Dragovich*, 142 F. App'x 33, 36-37 (3d Cir. 2005) (quoting *Monmouth*, 834 F.2d at 346). Similarly, if "deliberate indifference caused an easier and less efficacious treatment" to be provided, a defendant will have violated the plaintiff's Eighth Amendment rights by failing to provide adequate medical care. *West v.*

*Keve*, 571 F.2d 158, 162 (3d Cir. 1978) (citing and quoting *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974)); *see also Estelle*, 429 U.S. at 104.

835 F.Supp.2d 14, 22 (W.D. Pa. 2011).

Plaintiff alleges that her allegations, taken as true, rise to the level of deliberate indifference because the Defendant Nurses observed Lynady experiencing violent detox symptoms and ignored them. When all facts alleged are considered as true and all reasonable inferences are drawn, there is enough in the Amended Complaint to state a plausible Fourteenth Amendment claim against the Defendant Nurses.

### 2. Defendant Zaloga

In her Amended Complaint, Plaintiff alleges:

78. Decedent was never seen by a medical doctor, nurse practitioner, physician's assistant, or any similar professional. Defendant Zaloga is the only doctor to provide medical treatment in the Prison and is responsible for the entire CCI Medical staff. This is a violation of the standard of care.

. . . .

81. Likewise, Decedent became Dr. Zaloga's patient upon intake on July 22, 2018, and Defendant Zaloga never provided care to him. This abandonment of care is a breach of the standard of care.

82. It is incumbent that inmates who are in detox receive mental health treatment; failure to do so violates the standard of care.

83. Despite the fact that Defendants CCI, Zaloga, and Mallik knew Decedent was in detox, they provided no mental health treatment and insufficient detox treatment to him.

(Doc. 35, ¶¶ 78, 81-83).

Liability in a § 1983 action is personal in nature, and to be liable, a defendant must have been personally involved in the wrongful conduct. In other words, defendants are "liable only for their own unconstitutional conduct." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes,* 135 S.Ct. 2042 (2015). Respondeat superior cannot form the basis of liability. *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). As this Court has explained:

> This personal involvement can be shown where a defendant personally directs the wrongs, or has actual knowledge of the wrongs and acquiesces in them. *Id.; A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center,* 372 F.3d 572, 586 (3d Cir.2004) (noting that "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"). Actual knowledge "can be inferred from circumstances other than actual sight." *Baker v. Monroe Twp.,* 50 F.3d 1186, 1194 (3d Cir.1995). Acquiescence is found "[w]here a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in (i.e., tacitly assented to or accepted) the subordinate's conduct." *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1294 (3d Cir.1997).

*Festa v. Jordan,* 803, F. Supp. 2d 319, 325 (M.D. Pa. 2001) (Caputo, J.) (internal footnote omitted).

In her Brief, Plaintiff argues that "Dr. Zaloga ceased the suboxone which was validly prescribed outside of the prison, causing Decedent to enter withdrawal." The Amended Complaint, however, does not contain any allegation that Defendant Zaloga stopped Lynady's suboxone. It does, however, include allegations that Defendant Zaloga supervised Defendants Matalonis, Bogaski, Ketten, Mrykalo, and Wombacker, had some knowledge of the allegedly inadequate care provided by Defendants Matalonis, Bogaski, Ketten, Mrykalo, and Wombacker, and did nothing to prevent the inadequate care. Although a close case, I find that the denial of adequate medical care claim against Defendant Zaloga should be permitted to proceed.

C.     WHETHER PLAINTIFF'S MEDICAL NEGLIGENCE CLAIM SHOULD BE DISMISSED

In Count Four of her Amended Complaint, Plaintiff alleges:

**Count Four**
**Medical Negligence**
**Plaintiff v. Defendant Mallik and Defendant Zaloga**

. . . .

153.    The above mentioned injuries to Decedent were caused by the gross negligence, negligence, carelessness and recklessness of Defendant Mallik and Defendant Zaloga, acting individually and/or through their agents, servants, and employees acting in the course and scope of their employment, authority or apparent authority.

154.    The gross negligence, negligence, recklessness and carelessness of Defendants is described at length above.

155.   As a direct result of the gross negligence, negligence, recklessness and carelessness of the above Defendants, Plaintiff suffered physical and psychological injuries and pain and suffering associated with his physical and mental condition.

(Doc. 35, ¶¶ 153-155). In their Brief, the Medical Defendants do not address whether Plaintiff has pleaded a plausible medical negligence claim in her Amended Complaint. The only basis for dismissal argued is that Defendant Zaloga (a physician) is immune from civil liability under Pennsylvania's Mental Health Procedures Act (the "MHPA"), 50 P.S. § 7101 *et seq*. (Doc. 52, pp. 6-9).

The MHPA ". . . establishes rights and procedures for all involuntary treatment of mentally ill persons, whether inpatient or outpatient, and for all voluntary inpatient treatment of mentally ill persons." 50 P.S. § 7103. Under the MHPA "inpatient treatment" is defined as "[a]ll treatment that requires full or part-time residence in a facility." 50 P.S. § 7203.1. A "facility" is "[a] mental health establishment, hospital, clinic, institution, center, day care center, base service unit, community mental health center, or part thereof, that provides for the diagnosis, treatment, care or rehabilitation of mentally ill persons, whether as outpatients or inpatients." *Id.* Under the MHPA, a person "charged with crime, or who is undergoing sentence, is or becomes severely mentally disabled, proceeding may be instituted for examination and treatment under the civil provisions of this act in the same manner as if he were not so charged or sentenced." 50 P.S. § 7401.

As noted by the Medical Defendants, the MHPA also confers immunity from civil liability on certain actors in certain situations. It provides, in relevant part:

> In the absence of willful misconduct or gross negligence, a county administrator, a director of a facility, a physician, a peace officer or any other authorized person who participates in a decision that a person be examined or treated under this act, or that a person be discharged, or placed under partial hospitalization, outpatient are or leave of absence, or that the restraint upon such person be otherwise reduced, or a count administrator or other authorized person who denies an application for voluntary treatment or for involuntary emergency examination and treatment, shall not be civilly or criminally liable for such decision or any of its consequences.

50 P.S. § 7114(a).

The Medical Defendants argue that Defendant Zaloga is immune under 50 P.S. § 7114(a). Specifically, they argue:

> In the case at bar, Medical Defendants, as professional individuals providing care to inmates at Lackawanna County Prison, are unquestionably "medical providers" as defined under the MHPA, and as such qualify for the immunity provisions under the law, excepting evidence of conduct constituting "gross negligence" or "willful misconduct." 50 P.S. § 7103. Further, Plaintiff failed to allege a scintilla of evidence that Medical Defendants' conduct in this meets the exceedingly high bar to evade the immunity provisions of the MHPA.

> The glaring alleviations in the nature of the allegations in Plaintiff's Amended Complaint, when compared to the original Complaint, demonstrate the failure of those allegations to rise to the level of "gross negligence" or "willful misconduct." At most, the allegations merely amount to simple negligence, disagreements in the clinical judgments of Medical Defendants in how they rendered their care of the Decedent. Plaintiff's own Amended Complaint uses simple negligence terms in alleging the acts of Medical Defendants were "a violation of the standard of care." (Doc. 35 ¶78). Further, Plaintiff backs away from her claims of complete deprivations, in favor of alleging "insufficiencies"

in medication, medical, and psychiatric care. (*See Id.* at ¶¶ 63, 68, and 77). Insufficiencies are neither gross negligence nor willful misconduct, and thus, Plaintiff's claims are barred under the MHPA.

(Doc. 52, pp. 8-9).

Based on the allegations in the Amended Complaint, the MHPA is not applicable to this case. Under 50 P.S. § 7114(a), a physician, like Defendant Zaloga, who participates in a decision that a person be examined or treated under the MHPA is immune from civil liability absent gross negligence or willful misconduct. At the motion to dismiss stage, the Court is limited to considering the allegations in the pleading. Here, nothing in the Amended Complaint suggests that Defendant Zaloga participated in any decision that Lynady be treated under the MHPA in the four full days he spent at Lackawanna County Prison between July 22, 2018 and July 27, 2018. *See e.g.*, *Herman v. County of York*, 482 F.Supp.2d 554, 576-68 (M.D. Pa. 2007); *Carlos v. York County*, No. 3:15-CV-1994, 2016 WL 5024232 at *5 (M.D. Pa. Aug. 19, 2016); *Scherer v. Pennsylvania DOC*, No. 3:04-CV-191, 2007 WL 4111412 at *48-49 (W.D. Pa. Nov. 16, 2007); *Murzynski v. Erie County*, No. 1:15-CV-195, 2016 WL 5872430 at *6 (W.D. Pa. Oct. 7. 2016).

Accordingly, Plaintiff's medical negligence claim against Defendant Zaloga should be permitted to proceed at this time. If, through discovery, the Medical Defendants find evidence that Defendant Zaloga participated in making a decision

that Lynady be treated under the MHPA, they may raise the issue at summary judgment. At this point, it appears that the allegation is a total failure to act.

D.   WHETHER PLAINTIFF'S VICARIOUS LIABILITY CLAIM SHOULD BE DISMISSED

In Count Five of her Amended Complaint, Plaintiff alleges:

**Count Five**
**Corporate Negligence and Vicarious Liability**
**Plaintiff v. Defendants CCI and Zaloga**

. . . .

157.   CCI is responsible for health care of all inmates at Lackawanna County Prison.

158.   CCI has a duty to retain competent physicians and nurses and adequately staff them.

159.   CCI has a duty to oversee administration of medical treatment at Lackawanna County Prison.

160.   CCI has a duty to promulgate adequate policy to meet the medical and psychiatric needs of inmates at Lackawanna County Prison.

161.   Defendants Mallik, Zaloga, Bogaski, Matalonis, Ketten, Mrykalo, and Wombacker are principles, agents, employees, servants, or officers of Defendant CCI. All of these individuals individually committed medical negligence as described herein, and Defendant CCI is vicariously liable for this negligence.

162.   At all relevant times Defendants Mallik, Zaloga, Bogaski, Matalonis, Ketten, Mrykalo, and Wombacker were acting within the course and scope of their employment as principles, agents, employees, and servants or officers of Defendant CCI.

163.   Defendant CCI is vicariously liable for the actions/inactions and commissions/omissions of these Defendants as set forth in the

aforementioned paragraphs as though Defendant CCI performed the acts or omissions itself.

164.   Defendant CCI is liable for Decedent's injuries due to their defective policies as set forth in full above.

165.   As a direct result of the conduct set forth above, Decedent has suffered damages, both physical and psychological, more fully described in the preceding paragraphs.

(Doc. 35, ¶¶ 157-165).

The Medical Defendants do not discuss Plaintiff's corporate negligence or vicarious liability claims in their Motion or Briefs. In the absence of any argument, I find that this Court should be permitted to proceed.

    E.    THE MEDICAL DEFENDANTS' MOTION REQUESTING LEAVE TO FILE CROSS-CLAIMS (DOC. 71).

On January 12, 2021, the Medical Defendants filed a Motion requesting leave to file cross-claims. (Doc. 71, pp. 2-6). Along with that Motion, the Medical Defendants filed a proposed order (Doc. 71, p. 1), their proposed crossclaims (Doc. 71-1), and a certificate of non-concurrence (Doc. 71-2). No Brief in Support has been filed.

This Court's Local Rule 7.5 provides, in relevant part, that:

Within fourteen (14) days after the filing of any motion, the party filing the motion shall file a brief in support of the motion. If the motion seeks a protective order, a supporting brief shall be filed with the motion. **If a supporting brief is not filed within the time provided in this rule the motion shall be deemed to be withdrawn**. A brief shall not be required: (a) In support of a motion for enlargement of time if the reasons for the request are fully stated in the motion, (b) In support of

any motion which has concurrence of all parties, and the reasons for the motion and the relief sought are fully stated therein, or (c) In support of a motion for appointment of counsel.

(emphasis added).

More than fourteen days have passed since the Medical Defendants filed their Motion (Doc. 71). No brief has been submitted. No exception to the briefing requirement applies.

I also note, for the Medical Defendants' benefit that, although they are correct that under Fed. R. Civ. P. 12(a)(1)(A)(i) a *responsive pleading* (which may contain counterclaims and crossclaims properly asserted under Fed. R. Civ. P. 13) must be served within 21 days after being served with a Complaint. However, filing a Motion to Dismiss under Fed. R. Civ. P. 12, as the Medical Defendants did in this case, alters the response period. *See* Fed. R. Civ. P. (a)(4). Under Fed. R. Civ. P. 12(a)(4)(A), if the Court denies a Motion filed under Fed. R. Civ. P. 12 (as it has done here), "the responsive pleading must be served within 14 days after notice of the court's action."

[The following page contains the Conclusion]

V.      CONCLUSION

Accordingly, it is ORDERED that:

(1)     The Medical Defendants' Motion to Dismiss (Doc. 44) is DENIED.

(2)     The Medical Defendants' Motion Requesting Leave to File Crossclaims (Doc. 71) is DEEMED WITHDRAWN.

(3)     An Appropriate Order shall issue.


Date: February 10, 2021                    BY THE COURT

                                           _s/William I. Arbuckle_
                                           William I. Arbuckle
                                           U.S. Magistrate Judge